Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
Hilary Potashner (SBN 167060)
hpotashner@larsonllp.com
A. Alexander Lowder (SBN 269362)
alowder@larsonllp.com
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Telephone:  (213) 436-4888
Facsimile:   (213) 623-2000

Attorneys for Defendants
SCUDERIA DEVELOPMENT, LLC,
1001 DOUBLEDAY, LLC,
VON KARMAN - MAIN STREET, LLC,
and 10681 PRODUCTION AVENUE,
LLC

ROBERT F. RUYAK *(Pro Hac Vice)*
robertr@ruyakcherian.com
JOSHUA C. BENSON( (SBN 228983)
joshuab@ruyakcherian.com
**RUYAKCHERIAN LLP**
1901 L Street NW, Suite 700
Washington, DC  20036
Telephone:  (202) 838-1560

Attorneys for Defendants
PERFECTUS ALUMINIUM INC.,
aka "Perfectus Aluminum Inc.," and
PERFECTUS ALUMINUM ACQUISITIONS LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-cr-00282 RGK |
| Plaintiff, | *Assigned to Honorable R. Gary Klausner* |
| vs. | **WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)** |
| ZHONGTIAN LIU,<br>aka "Liu Zhongtian,"<br>aka "Chairman,"<br>aka "Uncle Liu,"<br>aka "UL,"<br>aka "Big Boss,"<br>CHINA ZHONGWANG HOLDINGS LIMITED,<br>aka "ZW,"<br>aka "Mother Ship,"<br>ZHAOHUA CHEN, | Hearing Date:  October 18, 2021 |

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT  NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1   aka "Chen Zhaohua,"
    aka "Uncle Chen,"
2  XIANG CHUN SHAO,
   aka "Johnson Shao,"
3  PERFECTUS ALUMINIUM, INC.,
   aka Perfectus Aluminum Inc.,"
4  PERFECTUS ALUMINUM
  ACQUISITIONS, LLC,
5  SCUDERIA DEVELOPMENT, LLC,
  1001 DOUBLEDAY, LLC,
6  VON KARMAN - MAIN STREET,
  LLC, and
7  10681 PRODUCTION AVENUE, LLC,

8    Defendants.

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Scuderia Development, LLC, 1001 Doubleday, LLC, Von Karman – Main Street, LLC and 10681 Production Avenue, LLC (the "Warehouse Defendants") and Perfectus Aluminum Inc. and Perfectus Aluminum Acquisitions, LLC (the "Perfectus Defendants") (collectively "Defendants"), on October 18, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard, by and through their attorneys of record, will and hereby do move this Court to set aside the jury's verdict and enter an acquittal pursuant to Federal Rule of Criminal Procedure 29 (a)-(c), on each and every count charged against them, on the grounds that the government has failed to prove all of the essential elements of the charged offenses beyond a reasonable doubt.[1]

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, all other papers and records filed in this matter, and any other argument or evidence that may be presented at or in connection with the hearing on this motion.

---

[1] Pursuant to Rule 29(d), defendants further request that, should the court enter an acquittal, that the court conditionally grant a motion for a new trial based on the reasons set forth in this motion, and in the concurrently filed motion for new trial.

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1    Dated:  September 7, 2021          LARSON LLP

2

3

4                                      By:        */s/ Hilary Potashner²*
                                           Stephen G. Larson
5                                          Hilary Potashner
                                           A. Alexander Lowder
6                                      Attorneys for Defendants
                                       SCUDERIA DEVELOPMENT, LLC,
7                                      1001 DOUBLEDAY, LLC,
                                       VON KARMAN – MAIN STREET, LLC, and
8                                      10681 PRODUCTION AVENUE. LLC

9

10   Dated:  September 7, 2021          RUYAKCHERIAN LLP

11

12

13                                     By:        */s/ Robert T. Ruyak*
                                           Robert F. Ruyak
14                                         Joshua C. Benson
                                       Attorneys for Defendants
15                                     PERFECTUS ALUMINIUM INC., aka
                                       "Perfectus Aluminum Inc.," and PERFECTUS
16                                     ALUMINUM ACOUISITIONS LLC

17

18

19

20

21

22

23

24

25

26

27

28

---

² Pursuant to Local Rule 5-4.3.4, I attest that Counsel for Defendants Perfectus Aluminium Inc., aka "Perfectus Aluminum Inc.," and Perfectus Aluminum Acquisitions LLC concurs in this filing's content and has authorized its filing.

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1

## **TABLE OF CONTENTS**

2

3                                                                                      **Page**

4  I.     INTRODUCTION ................................................................. 1
   II.    ARGUMENT ...................................................................... 1
5      A.    Legal Standard ............................................................ 1
6      B.    The Customs Fraud Verdicts Should Be Set Aside ................................. 2
7          1.   The Government Failed to Prove that Any Defendant Knowingly
                Passed a False CBP Form 7501 through a Customhouse ................... 2
8          2.   The Government Failed to Prove any Defendant Intended to Defraud
                the United States ............................................... 5
9      C.    The Wire Fraud Verdicts Should Be Set Aside ......................................... 6
10         1.   The Government Failed to Prove Knowing Participation.................. 7
           2.   The Government Failed to Prove Materiality.................................... 8
11         3.   Insufficient Evidence of an Intent to Defraud ................................11
           4.   The Government Failed to Prove That CZW Funded the Aluminum
12              Purchases ............................................................12
13         5.   The Government Failed to Prove Venue for Wire Fraud .................13
14     D.    The International Promotional Money Laundering Verdicts Should Be
                Set Aside ............................................................14
15     E.    No Basis for Aiding and Abetting Liability .........................................15
16     F.    The Conspiracy Verdict Should Be Set Aside.......................................16
           1.   Warehouse Defendants........................................................16
17         2.   Perfectus Defendants.........................................................18
18 III.    CONCLUSION ..........................................................................20

19

20

21

22

23

24

25

26

27

28

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT  NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*BASF Corp. v. United States*,
   30 C.I.T. 227 (2006), *aff'd* 497 F.3d 1309 (Fed. Cir. 2007)................................2

*Briceno v. Scribner*,
   555 F.3d 1069 (9th Cir. 2009).........................................................................9

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett
      Packard Co.*,
   964 F. Supp. 2d 1128 (N.D. Cal. 2013) ...........................................................3

*In re ChinaCast Educ. Corp. Sec. Litig.*,
   809 F.3d 471 (9th Cir. 2015)............................................................................3

*Fed. Ins. Co. v. United States*,
   882 F.3d 348 (2d Cir. 2018)...........................................................................20

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)..........................................................................................9

*United States v. Casch*,
   448 F.3d 1115 (9th Cir. 2006).......................................................................13

*United States v. Citroen*,
   223 U.S. 407 (1912)...................................................................................2, 3, 6

*United States v. Dowling*,
   739 F.2d 1445 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207
   (1985) ..........................................................................................................8, 9

*United States v. Holmes*,
   2020 WL 666563 (N.D. Cal. Feb. 11, 2020) (interpreting *Woods* to
   require that materiality be shown as to each alleged misstatement)...................9

*United States v. Katakis*,
   800 F.3d 1017 (9th Cir. 2015).........................................................................2

*United States v. Larson*,
   460 F.3d 1200 (9th Cir. 2006).........................................................................3

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT  NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

*United States v. Melchor–Lopez*,
   627 F.2d 886 (9th Cir. 1980)...................................................................17, 18

*United States v. Merriweather*,
   777 F.2d 503 (9th Cir. 1985)...........................................................................1

*United States v. Meyer*,
   432 F.2d 1000 (9th Cir. 1970).........................................................................6

*United States v. Miller*,
   111 F.3d 747 (10th Cir. 1997).......................................................................13

*United States v. Nevils*,
   598 F.3d 1158 (9th Cir. 2010).......................................................................11

*United States v. Oldenburg*,
   762 F. Supp. 272 (N.D. Cal. 1991)..................................................................1

*United States v. Pace*,
   314 F.3d 344 (9th Cir. 2002).........................................................................14

*United States v. Romo*,
   669 F.2d 285 (5th Cir. 1982).........................................................................18

*United States v. Shields*,
   844 F.3d 819 (9th Cir. 2016)...........................................................................8

*United States v. Silverman*,
   861 F.2d 571 (9th Cir. 1988)...........................................................................3

*United States v. Woods*,
   335 F.3d 993 (9th Cir. 2003)...........................................................................9

*United States v. Yun Tung Chu*,
   889 F.2d 1097 (9th Cir. 1989).......................................................................17

*United States v. Zapata*,
   497 F.2d 95 (5th Cir. 1974).............................................................................5

*Ziglar v. Abbasi*,
   137 S.Ct. 1843 (2017)...................................................................................19

LARSON LLP
LOS ANGELES

2
WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

**Federal Statutes**

18 U.S.C.
    § 545 ................................................................................2, 6, 14
    § 1343 ................................................................................6, 14
    § 1956(a)(2)(A) ................................................................14

**Federal Rules**

Federal Rule of Criminal Procedure 18 .........................................13, 14

Federal Rule of Criminal Procedure 29 .................................... 1, 2, 15, 20

**Other Authorities**

*Dep't of Just. Manual Resource Manual*, Title 9 § 967 .........................13

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.   <u>INTRODUCTION</u>

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

The trial record in this case suffers from a fatal lack of evidence that the defendants before the Court—Scuderia Development, LLC, 1001 Doubleday, LLC, Von Karman-Main Street, LLC, and 10681 Production Avenue, LLC (the "Warehouse Defendants") and Perfectus Aluminum Inc. and Perfectus Aluminum Acquisitions, LLC (the "Perfectus Defendants") (collectively "Defendants")— committed, or aided and abetted, any of the crimes charged in the Indictment.  Thus, pursuant to Federal Rule of Criminal Procedure 29, Defendants respectfully request that the Court set aside the jury's verdict and issue acquittals on all counts charged in the Indictment.  Even if the evidence is viewed in the light most favorable to the government, no rational juror could find beyond a reasonable doubt that the government proved all of the essential elements required for each count charged in the Indictment.  Because the government failed to prove all of the essential elements under any viable theory under any rational view of the evidence, no more is necessary to establish the Warehouse Defendants and Perfectus Defendants' right to a judgment of acquittal on all counts.   By including the arguments addressed herein, the Warehouse Defendants and Perfectus Defendants in no way waive or forfeit any of their claims that the government failed to prove any of the elements for any of the offenses beyond a reasonable doubt.

21

## II.   <u>ARGUMENT</u>[3]

22

### A.   <u>Legal Standard</u>

23

24

25

In considering a Rule 29 motion, the Court "must determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find the defendant guilty beyond a reasonable doubt." *United States v. Merriweather*,

26

27

28

---

[3] Although the Court denied Defendants' motion to strike inadmissible hearsay, (ECF No. 260), Defendant continue to object to such evidence, and maintain that the verdicts should be set aside with, or without the inadmissible matter.

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT  NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1   777 F.2d 503, 507 (9th Cir. 1985); *United States v. Oldenburg*, 762 F. Supp. 272, 275

2   (N.D. Cal. 1991) (granting motion for a judgment of acquittal and stating that a "mere

3   probability" that an element is met is not enough to support a conviction);

4   Fed. R. Crim. P. 29.  The defendant must be acquitted where the government fails to

5   prove an element of the alleged crime, or offers "mere speculation dressed up in the

6   guise of evidence." *United States v. Katakis*, 800 F.3d 1017, 1023-24 (9th Cir. 2015)

7   (citation omitted).

8   **B.  <u>The Customs Fraud Verdicts Should Be Set Aside</u>**

9       On Counts Eleven through Seventeen, charging violations of 18 U.S.C. § 545,

10  Defendants are entitled to judgments of acquittal because the government failed to

11  meet its burden on each element of the charged offenses.  The Indictment charges that

12  from May 19, 2014 to June 27, 2014, on seven occasions, defendants knowingly

13  passed a false CBP Form 7501 through a customhouse of the United States in stating

14  that the aluminum pallets were not subject to the AD/CVD duties imposed by the

15  2011 AD/CVD Orders.  (Indictment, ¶ 46.)  For each of these charged submissions

16  the government failed to elicit sufficient evidence that Defendants knowingly

17  submitted false information, or that they intended to defraud CBP.

18      1.   <u>The Government Failed to Prove that Any Defendant Knowingly</u>

19           <u>Passed a False CBP Form 7501 through a Customhouse</u>

20      At trial, the government failed to carry its burden to prove that any of the

21  Defendants knew any of the charged CBP forms were false when they were submitted

22  to CBP.  The condition of the pallets upon import is the critical inquiry on this issue.

23  *United States v. Citroen*, 223 U.S. 407, 413-14 (1912); *BASF Corp. v. United States*,

24  30 C.I.T. 227, 250 (2006), *aff'd* 497 F.3d 1309 (Fed. Cir. 2007) (recognizing "the

25  established rule in customs jurisprudence that the court must classify articles based

26  upon their condition as imported . . . .").  Shen's testimony is insufficient to establish

27  that any of the Defendants believed the aluminum pallets were subject to AD/CVD

28  duties when the forms were submitted to CBP.  While Shen testified that he believed

2

1   that the aluminum pallets did not qualify as finished merchandise, (RT, Vol. 4, at

2   164:23-25, 170:6-8), he did not participate in the submission of the charged CBP

3   forms, or participate in the importation process for any of the charged importations.

4   Moreover, Shen admitted that he had no connection with the Perfectus Defendants.

5   (RT, Vol. 4, at 187:18-24, 198:6-16.)  Thus, Shen's belief cannot be imputed to any

6   of the Defendants.

7       As to Liu's belief at the time of import, Shen testified that Liu purportedly told

8   Shen that he wanted to import test shipments of aluminum pallets to "get around" the

9   2011 AD/CVD Orders.  (*Id*. at 164:17-20; RT, Vol. 5, at 11:3-13:18.)  Significantly,

10  it is not illegal for a business to conduct its affairs in manner intended to avoid customs

11  duties.  *See Citroen*, 223 U.S. at 415 (a product "does not become dutiable under the

12  description because it has been manufactured or prepared for the express purpose of

13  being imported at a lower rate.")  Thus, even if credited, Shen's recount on Liu's

14  request does not establish the necessary intent.  But Shen's testimony should not be

15  credited—he admitted that he is subject to compulsive lying when it is in his self-

16  interest to do so.  Shen's recount of Liu's hearsay statements is also insufficient

17  because the government did not offer any evidence to corroborate Shen's suggestion

18  that Liu believed the aluminum pallets were subject to the AD/CVD duties.[4]   *See*

19  *United States v. Larson*, 460 F.3d 1200, 1211 (9th Cir. 2006); *see also United States*

20  *v. Silverman*, 861 F.2d 571, 578 (9th Cir. 1988).

21      Furthermore, the Court should disregard Shen's testimony under the "adverse

22  interest exception," which prevents "a rogue agent's actions or knowledge" to be

23  imputed to the principal where "the agent acts adversely to the principal in a

24  transaction or matter, intending to act solely for the agent's own purposes or those of

25  another person."  *In re ChinaCast Educ. Corp. Sec. Litig*., 809 F.3d 471, 476 (9th Cir.

26  2015); *Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard*

27

28  [4]  Even if the jury credited Shen's testimony, Liu was not an agent of any defendant.

LARSON LLP
LOS ANGELES

3

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

*Co.*, 964 F. Supp. 2d 1128, 1144 (N.D. Cal. 2013) ("[u]nder the adverse interest exception, dismissal of the corporation from a securities fraud action is warranted where the only corporate agent who may supply the requisite scienter was acting completely adversely to the company's interests."). At trial, Shen admitted that from the very beginning, he was acting, not in Defendants' interests, but for his own, as evidenced by Shen's theft of over $240,000,000 from the Liu family.

Directly contrary to Shen's self-serving testimony, multiple witnesses testified that they believed that the aluminum pallets qualified as "finished merchandise" and were not subject to the 2011 AD/CVD Orders. Mr. Wang—a customs broker with thirty years' experience who independently reviewed the 2011 AD/CVD Orders— testified that when he submitted the forms, he believed that the aluminum pallets were only subject to the normal duty. (RT, Vol. 5, at 66:19-23.) Likewise, Mark Li, who was employed by Perfectus from 2009 through 2016, testified that Perfectus viewed the pallets as not being subject to the 2011 AD/CVD Orders. (RT, Vol. 3, at 107:1-108:5.) Furthermore, CBP's treatment of the pallets upon entry and the outcome of its audit of Aluminum Shapes also negate a finding that any of the Defendants "knew" that the pallets were subject to the 2011 AD/CVD Orders at the time of importation. Robert Otterbein, who served as the Vice President of Finance for Aluminum Shapes from 2012 through 2018, testified that after the CBP conducted an audit of Aluminum Shapes in 2015, which included a physical inspection of aluminum pallets, the CBP's auditors concluded that the pallets were not subject to the 2011 AD/CVD Orders. (RT, Vol. 6, at 205:8-210:9; Ex. 217 at 4 ("imports made by ASLLC were not within the scope . . .").)

That the Department of Commerce's scope ruling ultimately found that the aluminum pallets did not fall within the "finished merchandise" exception of the 2011 AD/CVD Orders, does not change the analysis. That determination was made on June 13, 2017, three years *after* the last charged Form 7501 was submitted to CBP on

LARSON LLP
LOS ANGELES

4

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1  June 27, 2014.[5]  Thus, the Department of Commerce's 2017 scope ruling could not

2  have informed Defendants' states of mind when Mr. Wang submitted the customs

3  forms charged in the indictment.  *See, e.g., United States v. Zapata*, 497 F.2d 95, 97–

4  98 (5th Cir. 1974) (noting the government must prove beyond a reasonable doubt that

5  *at the time it was imported*, the defendant importing a controlled substance had the

6  guilty mind such that the defendant was aware of the fact that he was committing

7  some sort of crime) (emphasis added).  In sum, there is insufficient evidence to

8  support a finding that any of the Defendants knew that the forms were false at the

9  time of importation.

10          2.      The Government Failed to Prove any Defendant Intended to

11                  Defraud the United States

12          The trial record also does not contain sufficient evidence to prove that any of

13  the Defendants acted "willfully and with the intent to defraud the United States" as

14  required for a conviction of passing false and fraudulent papers through a

15  customhouse of the United States.

16          The government argued that an intent to defraud could be deduced from the

17  concealment of the pallets.  (RT, Vol. 1, at 130:2-22.)  However, the evidence makes

18  clear that the government's concealment theory failed.  At trial, not a single witness

19  testified that any of the defendants made an effort to conceal the aluminum pallets.

20  To the contrary, various witnesses testified that the aluminum pallets were stored in

21  plain view inside and outside of the Irvine, Fontana and Riverside Warehouses.  (*See,*

22  *e.g.,* RT, Vol. 1, at 199:12-200:18; Vol. 2, at 37:4-22, 76:20-79:4; Vol. 6, at 167:14-

23  168:10; Vol. 7, at 210:15-22.)  Moreover, each and every of the more than 400

24  shipments was properly declared as "aluminum pallets," presented to customs, and

25  subject to inspection.  (RT, Vol. 7, at 24:25-25:3, 27:10-21, 32:2-33:19, 37:9-19.)

26  _____

27  [5]  Furthermore, the reason given for the pallets exclusion from the exception—that
28  they did not include any non-aluminum parts—articulated for the first time in the
    2017 scope ruling.

LARSON LLP
LOS ANGELES

5

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1  Thus, there is no basis in the record to support the government's smuggling and
2  concealment allegations.

3       Likewise, the government failed to prove an intent to defraud the United States
4  by failing to adduce any evidence that Defendants attempted to disassemble the
5  aluminum pallets and sell them as extrusions after the merchandise cleared customs.
6  Again, multiple witnesses directly refuted that theory.  (*See,* e.g., RT, Vol. 1, at
7  202:18-203:1; Vol. 2, at 81:6-11; Vol. 4, at 188:12-15; Vol. 6, at 187:12-18.)

8       The customs fraud counts also fail because the mere storing or stockpiling of
9  imported merchandise is insufficient to prove the intent required to sustain any
10 conviction for the charged customs fraud in violation of 18 U.S.C. § 545.  *See United*
11 *States v. Meyer*, 432 F.2d 1000, 1001–02 (9th Cir. 1970) ("Mere possession of
12 illegally imported merchandise does not prove the possessor's knowledge of its illegal
13 importation.").  This conclusion is supported by the fact that a violation of 18 U.S.C.
14 § 545 occurs at the time of importation, *namely*, when the allegedly false form is
15 passed through a customhouse of the United States.  *See Citroen*, 223 U.S. at 413-14.
16 In this regard, the subsequent storage of the aluminum pallets *after* the pallets were
17 imported into the United States is irrelevant to the question of whether any of the
18 Defendants knowingly passed false papers through a Customhouse with the intent to
19 defraud the United States.

20      For these reasons, the Court should set aside the jury verdicts and acquit
21 Defendants on Counts Eleven through Seventeen.

22      **C.    <u>The Wire Fraud Verdicts Should Be Set Aside</u>**

23      On Counts Two through Ten for wire fraud in violation of 18 U.S.C. § 1343,
24 the Indictment alleges that the Defendants were involved in a scheme to defraud
25 *foreign investors in defendant China Zhongwang* as to material matters, and to obtain
26 money from such investors by means of material false and fraudulent pretenses,
27 representations, and promises.  (*See* Indictment, ¶ 36.)  The government failed to meet
28 its burden as to the Perfectus Defendants or the Warehouse Defendants.

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1        1.      <u>The Government Failed to Prove Knowing Participation</u>

2        As with the customs fraud counts, the trial record lacks sufficient evidence that

3  any of the Defendants participated in a scheme to defraud investors in CZW.  The

4  government relied on Defendants' mere association with Liu.  There is no evidence

5  of actions taken by these defendants that were directed at CZW investors, or done

6  with the knowledge that CZW shareholders might be induced to part with money or

7  property.

8        Lacking any evidence of any actions taken by Defendants, at trial, the

9  government relied on the testimony of Oliver Chi and Eric Shen to convince the jury

10 that Defendants knowingly participated in a scheme to defraud shareholders in CZW.

11 At trial, Oliver Chi testified about statements Shen made in 2013 while Shen and

12 Mr. Chi attempted to develop an aluminum melting facility in Barstow, California.

13 According to Shen, prior to the 2009 IPO, ZP Liu told Shen that Liu would lend Shen

14 $200 million and that Shen would subsequently lend it back to CZW.  (RT, Vol. 4, at

15 106:1-2.)  Shen testified that the $200 million loan was wired through Scuderia

16 Capital Partners, LLC's bank account (a separate entity entirely distinct from

17 Defendant Scuderia Development, LLC) from Zhongwang International Group (an

18 investment company incorporated in the British Virgin Islands) and that Shen

19 himself—not the Warehouse Defendants—stood to benefit from this transaction by

20 way of lying and stealing from the Liu family.  (*Id*. at 109:4-17, 110:22-111:5; 127:1-

21 5; 225:24-226:2.)  Thus, there is no evidence that the Perfectus Defendants or the

22 Warehouse Defendants participated in the pre-IPO $200 million loan, or made, or

23 even contributed to, any statements made on behalf of CZW to any investors.  Further,

24 there is no evidence that the wire transfers the government proffered as related to the

25 $200 million loan went through or were made from bank accounts owned by the

26 Perfectus Defendants or by the Warehouse Defendants.

27       In sum, viewing the evidence in the light most favorable to the government,

28 there is insufficient evidence to prove beyond a reasonable doubt that any of the

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

Perfectus Defendants or the Warehouse Defendants "knowingly participated in, devised or intended to devise a scheme or a plan to defraud" investors in CZW.

### 2.    The Government Failed to Prove Materiality

The government also failed to adduce sufficient evidence that the omissions or misstatements, if any, were material.   At trial, the government offered expert testimony from Dr. Torben Voetmann in an effort to show that the alleged omissions and the allegedly false statements regarding related party transactions, CZW's revenue, and pallet demand in the United States might be "relevant" to investors purchasing and holding shares of CZW.

With respect to CZW's non-disclosure of related party transactions and Liu's connection to the Perfectus Defendants and Warehouse Defendants in CZW's annual reports, such non-disclosures can form the basis of a scheme to defraud only "when there exists an independent duty (either fiduciary or derived from an explicit and independent statutory requirement) and such a duty has been breached." *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207 (1985) (reasoning that a contrary rule would bring "almost any illegal act within the province of the ... fraud statute."); *United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016) (holding that the jury must find a relationship creating a duty to disclose before it could conclude that a material non-disclosure supports a wire fraud charge).  Significantly here, all of the alleged misrepresentations made by CZW and Liu were made either in the People's Republic of China or Hong Kong, and the government has not adduced any evidence that the alleged statements were made in the United States, to investors in the United States or pursuant to the laws of the United States.  Indeed, the evidence is clear: CZW and Liu were required to adhere to the regulations of the Hong Kong Stock Exchange in making any statements to investors of CZW.  (RT, Vol. 8, at 54:17-24.)

In accord, to prove its non-disclosure theory, the government was required to prove that CZW or Liu breached a fiduciary duty owed to investors under the laws of

8

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

the PRC or Hong Kong or violated the reporting requirements of the Hong Kong Stock Exchange to support a conviction for wire fraud.  Here, the government did not adduce any evidence that Liu or CZW breached any fiduciary duty under the applicable foreign law or violated an "explicit and independent statutory requirement," *Dowling*, 739 F.2d at 1449, for reporting under the regulations of the Hong Kong Stock Exchange.  *See Morrison v. Nat'l Australia Bank Ltd*., 561 U.S. 247, 269 (2010) (acknowledging that "[l]ike the United States, foreign countries regulate their domestic securities exchanges and securities transactions occurring within their territorial jurisdiction" and that such regulations often differ from the United States "as to what constitutes fraud, what disclosures must be made [and] what damages are recoverable …").  The Court should acquit Defendants on all wire fraud counts to the extent such charges are based on non-disclosure as there is a "total failure of proof" of a breach of a fiduciary duty owed to investors in CZW.  *See Briceno v. Scribner*, 555 F.3d 1069, 1079 (9th Cir. 2009) (holding evidence is insufficient where there is a "total failure of proof" of a requisite element).

There is likewise insufficient evidence to prove materiality as to CZW and Liu's statements regarding market demand and export revenue earned as a result of sales made in the United States.  To obtain a conviction for wire fraud, the government at trial was required to prove that *each* statement made in connection with the charged scheme to defraud investors in CZW was material.  *See United States v. Woods*, 335 F.3d 993, 1000 (9th Cir. 2003) ("*All* deceptive or misleading statements, false statements and half-truths … *must be material* to form the basis of mail or wire fraud charges.") (emphasis added); *United States v. Holmes*, 2020 WL 666563, at *13, n. 8 (N.D. Cal. Feb. 11, 2020) (interpreting *Woods* to require that materiality be shown as to each alleged misstatement); Trial, Vol. 9, at 121:4-8 (instructing the jury that the second element of wire fraud requires the government to prove that "the statements made are false" and "material").

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

Viewing the evidence in the light most favorable to the government, the Court should acquit Defendants on Counts Two through Ten because the government has not proved beyond a reasonable doubt that each statement was false or material, let alone both.  With respect to CZW's annual statements issued in 2009, 2010 and 2011, the government's evidence does not prove that the statements related to CZW's export revenues from the United States in those years were *in fact* false.  In its closing argument, the government told the jury that these statements were false because the "aluminum extrusions didn't have real customers" in those years.  (RT, Vol. 9, at 27:7-19.)  However, as evidenced by the testimony of Olivia Resendez, Suk Luo, Christian Robles, Mark Li, and Kim Nguyen—former employees of the Perfectus Defendants—the aluminum extrusions imported prior to the 2011 AD/CVD Orders were sold to actual customers in the United States in 2009, 2010 and 2011.  (*See, e.g.,* RT, Vol. 3, at 119:15-120:23.).  Therefore, the government failed to prove beyond a reasonable doubt that any statement in CZW's annual reports issued from 2009 through 2011 regarding revenues earned from the United States in 2009, 2010 and 2011 were false.

The government also failed to adduce sufficient evidence to prove materiality beyond a reasonable doubt with respect to statements contained in the IPO prospectus. To prove materiality, the government relied exclusively on the testimony of its expert Dr. Voetmann.  As to the information about the $200 million loan contained in the IPO prospectus, Dr. Voetmann testified that "reading that prospectus as a potential investor and I see that they have a relationship with a bank, a U.S. bank, U.S. entity, that tells me that they are able to secure a loan, or the bank at least looked at their credibility, looked at their ability to pay back that loan. So as an investor, that's a good thing for me to look at."  (RT, Vol. 7, at 158:6-13.)  The IPO prospectus, however, never disclosed a relationship with a United States bank as Dr. Voetmann suggested; rather, the IPO prospectus states that "[o]n July 27, 2008, ZIGL entered into an agreement with Scuderia Capital for borrowing a Term Loan in the principal

10

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

amount of US$200 million, … which was secured by security provided by Mr. Liu." (Ex. 129, at 88. 93-95.)  The IPO prospectus then states that "Scuderia Capital is an [private] entity established in the United States and is principally engaged in business ventures and real estate development projects."  (*Id*.)  In light of the voluminous amount of information contained in the IPO prospectus, Dr. Voetmann's testimony offers nothing more than "mere speculation, rather than reasonable inference" and is "insufficient to support a verdict" of wire fraud.  *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010).

Lastly, the government failed to call a single shareholder in CZW to testify at trial.  Thus, the record does not contain any evidence that the statements identified by the government were material to any actual investors.  And, as discussed above, Dr. Voetmann's speculative and blanket testimony does not fill the evidentiary gap.

Accordingly, the Court should set aside the jury's verdict on Counts Two through Ten and enter acquittals for Defendants.

### 3. Insufficient Evidence of an Intent to Defraud

At trial, the government also made an inadequate showing as to the element of intent to defraud.  Again, as to the Perfectus Defendants and the Warehouse Defendants, the government failed to introduce evidence that these defendants, or anyone acting on their behalf, took any actions knowingly designed to defraud the public shareholders of CZW.  On this element too, the government relied on testimony from Shen in a failed  attempt to prove that there was some intent to defraud shareholders in CZW.  Again, there is nothing corroborating Shen's testimony, and the government failed to offer any evidence to prove the Perfectus Defendants or the Warehouse Defendants' acted with the intent to defraud shareholders in CZW.

Even more, Shen's testimony is insufficient to prove beyond a reasonable doubt that Defendants acted with the intent to deceive and cheat shareholders in the publicly held company.  In *United States v. Lew*, the Ninth Circuit held that the defendant could not be convicted of mail fraud because the government failed to prove that the

11

LARSON LLP
LOS ANGELES

defendant had the specific intent to deprive the alleged victim of property or money. 875 F.2d 219, 222 (9th Cir. 1989).  There, the defendant, an immigration attorney, allegedly misrepresented his immigrant-client's employment status to the Department of Labor.  *Id*. at 220–21.  While the government argued that defendant intended to defraud his immigrant-clients of money, the court found that there was no evidence that the defendant intended to deceive his clients.  *Id*.  Rather, the evidence showed that the defendant intended to deceive the Department of Labor.  *Id*. at 221.

Similarly here, at trial, Shen testified that Liu told him that purpose of the $200 million loan between ZIGL and Scuderia Capital Partners was to "serve to restructure the cash position of China Zhongwang prior to its IPO … in an attempt to show the banks, the investment bank, underwriting banks that China Zhongwang had adequate cash on hand."  (RT, Vol. 4, at 108:11-23.)  This testimony is not evidence of Defendants' intent to defraud *shareholders* in CZW.  Instead, the aforementioned testimony suggests that the $200 million loan was intended to influence *investment banks* about the cash position of CZW prior to CZW's IPO.  Therefore, there is insufficient evidence that the Defendants acted with the specific intent to defraud shareholders in CZW.  Therefore, the Court should set aside the jury verdicts enter acquittals for Defendants on Counts Two through Ten.

4.   The Government Failed to Prove That CZW Funded the Aluminum Purchases

The Indictment alleged that the scheme was fraudulent because the funds used to pay for the aluminum pallets originated with the public Hong Kong company, CZW.  (Indictment, ¶ 33.)  At trial, however, the government failed to introduce sufficient evidence to prove that CZW provided the Perfectus Defendants with the funds used to pay for the aluminum pallets.  Indeed, Special Agent ("SA") Lori Carmack, who investigated all of the bank transactions over the requisite time period, admitted that she did not have any information showing that the Perfectus Defendants received any funds from CZW.  (RT, Vol. 7, at 138:6-12.)  And there was no evidence

12

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1  at trial of any funds leaving the publicly held CZW destined for Perfectus.  Moreover,

2  the government failed to adduce any evidence that the Warehouse Defendants caused

3  any of the wires to be made, much less be made in furtherance of a scheme to defraud

4  shareholders in CZW.  (RT, Vol. 3, 104:2-16 (Li testifying that he never worked for

5  the Warehouse Defendants).)  Therefore, the government has failed to satisfy this

6  element with respect to the Perfectus Defendants or to the Warehouse Defendants.

7        5.    <u>The Government Failed to Prove Venue for Wire Fraud</u>

8        Nor has the government met its burden to show that venue is proper as to the

9  wire fraud counts and the related promotional money laundering counts.  Per the

10  Indictment, the wire fraud counts and related money laundering counts are based

11  solely on one bank account—"PCA Account 9191."  (*See* Indictment, ¶¶ 38, 42).

12  Thus, the government was required to establish that for these counts, venue lies in the

13  Central District of California because the underlying offenses based on PCA Account

14  9191—were committed in this judicial district.  *See United States v. Miller*, 111 F.3d

15  747, 750-52 (10th Cir. 1997) (the burden of proof on venue always rests with the

16  government); *United States v. Casch*, 448 F.3d 1115, 1117 (9th Cir. 2006)

17  (establishing that venue is part of the prosecution's burden); Fed. R. Crim. P. 18

18  ("Unless a statute or these rules permit otherwise, the government must prosecute an

19  offense in a district where the offense was committed.").

20        The government made no attempt to establish that offenses arising out of

21  transactions in PCA Account 9191 occurred in the Central District of California.  Over

22  nine days of trial, the government mentioned PCA Account 9191 only twice—when

23  asking Mark Li whether he recognized the bank account, and when asking

24  SA Carmack to review the account's bank statements.  (*See* RT, Vol. 3, at 41:23-46:4;

25  Vol. 7, at 109:2-122:25).  SA Carmack was only able to confirm the business address

26  of Pengcheng Aluminum, but never confirmed the location of PCA Account 9191

27  itself.  (*See* RT Vol. 7, at 109:2-122:25 (reviewing Exhibit 662)).  The DOJ's policy

28  on this very question—of where appropriate venue lies in wire fraud charges—

mandates that venue lie in "any district in which an interstate or foreign transmission was issued or terminated." *Dep't of Just. Manual Resource Manual*, Title 9 § 967 (Venue in Wire Fraud). Without showing that the wires issued from or terminated in PCA Account 9191 occurred in the Central District of California, the government has not met its burden that the Central District of California is the proper venue for the wire fraud and related money laundering charges. *See* Fed. R. Crim. P. 18; *United States v. Pace*, 314 F.3d 344, 350-51 (9th Cir. 2002) (vacating wire fraud convictions where government did not meet its burden of showing that the defendant "beg[a]n, continued, or completed" wire fraud in that district).

This Court should therefore set aside the jury's verdicts on the wire fraud counts and enter a judgment of acquittal on each of these counts.

### D.      The International Promotional Money Laundering Verdicts Should Be Set Aside

In Counts Eighteen through Twenty-Four of the Indictment, the government charged the Perfectus Defendants with seven counts of international promotional money laundering based on six wire transfers that took place on June 5, 2014, July 3, 2014, July 16, 2014, July 25, 2014, August 5, 2014 and October 17, 2014. (Indictment, ¶ 42.)  To establish international promotional money laundering, the government must demonstrate that Defendants transmitted, transported or transferred a monetary instrument or funds from a place in the United States to or through a place outside the United States  "with the intent to promote the carrying on of specified unlawful activity." *See* 18 U.S.C. § 1956(a)(2)(A).  The Indictment alleges the wire transfers were made to promote the carrying on of "specified unlawful activity," namely, wire fraud (18 U.S.C. § 1343) and customs fraud (18 U.S.C. § 545). (Indictment, ¶ 42.)

Viewing the evidence in the light most favorable to the government, there is insufficient evidence to sustain a conviction for wire fraud or customs fraud against the Warehouse Defendants and Perfectus Defendants.  Therefore, because there is

14

insufficient evidence to support violations for wire fraud and customs fraud—i.e., the "specified unlawful activity" element of promotional money laundering charged in the Indictment—the Court should acquit the Perfectus Defendants on Counts Eighteen through Twenty-Four under Rule 29.

### E.    No Basis for Aiding and Abetting Liability

In connection with Counts Two through Seventeen, the Warehouse Defendants are also charged with aiding and abetting the substantive offenses. (Indictment, ¶¶42-46.)  The record at trial, however, could not have been more clear that the Warehouse Defendants were little more than passive bystanders in the conduct charged in the Indictment.   The law is clear that a defendant's mere presence is insufficient to establish aiding and abetting liability.   (Ninth Circuit Model Criminal Jury Instructions, No. 6.10 (2010 ed.))  Indeed, the only purpose of Defendants Doubleday, Von Karman, and Production was to hold title to the warehouses.  (RT, Vol. 4, at 141:13-14.)  Moreover, the government did not introduce any evidence of any actions taken by, or on behalf of these three corporate entities in furtherance of the charged wire fraud scheme or of the charged submissions to CBP.  Likewise, the government did not introduce any statements by, or on behalf of, Defendants Doubleday, Von Karman or Production.  Indeed, the government admitted that it did not have evidence of any financial transactions made by or for the aforementioned entities. (RT, Vol 7, at 140:11-141:15, 143:8-16, 144:21-146:9, 147:7-22.)

As to Defendant Scuderia Development, given the timing of when the Warehouses were purchased, the Warehouse Defendants' act of purchasing the Warehouses was not done with the "intent to facilitate" the charged wire fraud scheme or charged submissions to CBP.  At trial, the government introduced evidence showing that three of the warehouses were purchased *before* the Department of Commerce provided notice of the 2011 AD/CVD Orders: (i) the Ontario Warehouse was purchased by Defendant Doubleday on October 7, 2008; (ii) the Irvine Warehouse was purchased by Defendant Von Karman on March 6, 2009; and (iii) the

15

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

LARSON LLP
LOS ANGELES

Fontana Warehouse was purchased by Defendant Production Avenue on August 25, 2009. (Exs. 228, 229, 230.) The Riverside Warehouse was purchased by Defendant Scuderia Development on October 28, 2014, which was *after* the last importation of aluminum pallets on June 27, 2014. (Ex. 227.) Thus, the purchasing of the warehouses cannot be evidence of "aiding and abetting," as such acts occurred *before* any motive for the charged scheme could have existed, or *after* the charged conduct was complete.

Accordingly, the records does not contain sufficient evidence to impose aiding and abetting liability on the Warehouse Defendants for Counts Two through Seventeen.

### F.   The Conspiracy Verdict Should Be Set Aside

In its closing argument, the government identified the following seven individuals as members of the purported conspiracy: Zhongtian Liu, Zhaohua Chen, Zuopeng Liu, Eric Shen, Johnson Shao, Zhongsuo Liu, and Zhijie Wang. (RT, Vol. 9, at 9:10-10:8). Of the seven members, only Zuopeng Liu and Johnson Shao were identified as agents acting for the Perfectus Defendants. Similarly, only Eric Shen and Zhijie Wang were identified as agents acting for the Warehouse Defendants. But the government failed to prove at trial that any of these four individuals—let alone any of the Defendants—conspired to (i) to defraud the United States, specifically, the CBP; or (ii) to commit the offenses of customs fraud, wire fraud, or money laundering to promote either customs fraud or wire fraud. (*See* Indictment, ¶¶ 32, 42). Per the plain text of the Indictment, the government's conspiracy charge collapses into two simple theories—either a conspiracy to commit customs fraud, or a conspiracy to commit wire fraud, with the wire fraud as the sole basis for promotional money laundering. The government has failed to meet its burden to show either.

#### 1.   Warehouse Defendants

In this case, the alleged agreement to defraud the United States and/or the agreement to commit the charged offenses must have been made sometime between

16

LARSON LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1    June 2008 through May 7, 2019.  (Indictment, ¶ 32.)  Here, the Court should also set

2    aside the jury's verdict and acquit the Warehouse Defendants on Count One because

3    there is no evidence as to what the Warehouse Defendants specifically agreed to, who

4    agreed to it on the respective entity's behalf, or what any agreement was intended to

5    accomplish.  During the relevant time period, only Eric Shen and Zhijie Wang had

6    the authority to act on behalf of the Warehouse Defendants.

7         At trial, Shen testified that the *only* purpose of Defendants Doubleday,

8    Von Karman and Production was to hold title to the Ontario, Irvine and Fontana

9    Warehouses.   (RT, Vol. 4, at 141:13-15.)   The government's summary witness

10   admitted that she did not review any bank records for the three aforementioned

11   corporate entities.  And, the government did not offer a single witness who claimed

12   to be employed by Defendants Doubleday, Von Karman or Production.  Thus, apart

13   from Shen's testimony addressing the purpose of Defendants Doubleday,

14   Von Karman and Production, the government did not offer any evidence of any

15   actions taken by, or on behalf of these three corporate entities.  Accordingly, there is

16   insufficient evidence that Defendants Doubleday, Von Karman and Production

17   agreed to participate in the conspiracy charged in the Indictment.

18        Likewise, there is no evidence that Defendant Scuderia Development, LLC

19   agreed to be part of a conspiracy.  While Shen may have conducted other business on

20   behalf of Liu through Defendant Scuderia Development, this is not sufficient evidence

21   to link Scuderia Development to the conspiracy.  *See United States v. Yun Tung Chu*,

22   889 F.2d 1097 (9th Cir. 1989) ("Chu's compliance with Yau's instruction … similarly

23   fails to link him to the conspiracy, since his action did not demonstrate that he was

24   aware of the conspiracy and that he complied in order to further its goals); *United*

25   *States v. Melchor–Lopez*, 627 F.2d 886, 891 (9th Cir. 1980) (acquiescence in the

26   purpose of a conspiracy, without an intention to further the conspiracy, is insufficient

27   to support a conspiracy conviction).

28

**LARSON** LLP
LOS ANGELES

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

Furthermore, the Indictment makes clear that Count One against the Warehouse Defendants is based on the stockpiling of the aluminum pallets. (*See, e.g.,* Indictment, ¶ 33j.)   In October 2014, when Scuderia Development purchased the Riverside Warehouse, Shen's involvement had ceased and Wang became the manager and owner of Scuderia Development.  The only evidence offered by the government to support Wang's agreement to participate in the conspiracy is that Wang was Liu's wife.  "That one is married to, associated with, or in the company of a criminal does not support the inference that the person is a criminal or shares in the criminal's guilty knowledge."  *United States v. Romo*, 669 F.2d 285, 288 (5th Cir. 1982); *Melchor–Lopez*, 627 F.2d at 891 (there can be no conviction for guilt by association).  Because the evidence offered at trial demonstrates nothing more than Wang's marital association with Liu, there is insufficient evidence of an agreement by the Warehouse Defendants to participate in the conspiracy charged in the Indictment.

The government's evidence also fails to prove that Shen and Wang took any action on behalf of the Warehouse Defendants that was intended further any object of the charged conspiracy.  That Wang ordered the shredding of her personal documents after the execution of the search warrant likewise does not satisfy this element.  Significantly, the documents were not shredded at the Warehouses and the Warehouse Defendants did not employ Shawn Li or Julia Kezios.  (RT, Vol. 7, at 223:14-25, 234:25-235:9.)  The evidence at trial further shows that the documents Wang ordered to shred did not relate to the Warehouse Defendants.  (*Id.* at 231:15-17 [Q: And the papers she told you to shred, did you see any of those documents? Shawn Li: "Yes, only see some casino winning slips; RT, Vol. 8, at 30:6-37:15 [Julia Kezios testifying that she did not shred any business documents].)

### 2.   Perfectus Defendants

Here, the Court should set aside the verdict and acquit the Perfectus Defendants on Count One because there is no evidence as to what the Perfectus Defendants specifically agreed, who agreed to it on the respective entity's behalf, or what any

18

agreement was intended to accomplish.  Nor is there any evidence that the Perfectus Defendants—acting through Zuopeng Liu or Johnson Shao—knew of any object of the conspiracy and acted to further this object.

Between Zuopeng Liu and Johnson Shao—the only individuals who could have agreed to anything on behalf of the Perfectus Defendants—neither was shown to have agreed to enter a conspiracy.  First, Zuopeng Liu—Zhongtian Liu's son—had no role in the day-to-day operations of the Perfectus Defendants.  Indeed, Toby Henson—the warehouse manager for Pengcheng Aluminum from February 2008 to October 2015, a period of time covering the *entirety* of the conspiracy—testified as much.  No witness testified to the contrary.  In short, the evidence offered by the government regarding Zuopeng Liu's involvement in a conspiracy is not based on actions he took, but rather on the fact that he is Zhongtian Liu's son.  (*See* RT Vol. 4, at 162:21-163:11; 183 (testimony that Zuopeng Liu attended two meetings with his father) and RT Vol. 6, at 157:10-13 (when Zuopeng Liu would visit the Walnut warehouse, Toby Henson testified that, "[m]ost of [the] time he was there just to visit and bring his friends there and show off his exotic cars.").

Second, there is nothing to show that Johnson Shao—the one-time CEO of the Perfectus Defendants—ever agreed to enter a conspiracy.  Indeed, Johnson Shao did not even attend either of the meetings that Zuopeng Liu purportedly attended regarding the AD/CVD Orders or the Barstow project.  (*See* RT Vol. 4, at 162:21-163:11; 183 (Shen's testimony did not include Shao as an attendee at either meeting). Nor is there any evidence that Johnson Shao acted as anything other than a prudent and responsible managerial employee following orders.   Per the government's evidence, Shao instructed other employees to sell the pallets (RT, Vol. 1, at 171:4-5), appeared to treat Zhongtian Liu with respect (RT, Vol. 2, at 242:1-3), followed email instructions regarding pallet orders (RT, Vol. 2, at 207-229), and never instructed George Wang, the customs broker, to fill out customs forms in any particular way (RT Vol. 5, at 56:3-9).

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1    Under the intracorporate conspiracy doctrine, a corporation cannot conspire
2  with its own employees because they are regarded as a single actor.  *See Ziglar v.*
3  *Abbasi*, 137 S.Ct. 1843, 1867 (2017) ("an agreement between or among agents of the
4  same legal entity, when the agents act in their official capacities, is not an unlawful
5  conspiracy"); *Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 (2d Cir. 2018) (noting
6  that the application of the intracorporate conspiracy doctrine to the criminal context
7  remains an open question, and that the Second Circuit has at least "been willing to
8  entertain that possibility *arguendo*").  There is no evidence of any agreement to enter
9  the conspiracy based on the actions of Zuopeng Liu and Johnson Shao—the only
10  individuals who were identified as acting on behalf of the Perfectus Defendants.  And,
11  to the extent the government continues to argue that Liu is an agent of Defendants, or
12  that such entities are his alter ego, there is no basis for conspiracy liability.

13    With or without the government's hearsay evidence, the government's
14  evidence is wholly insufficient for a jury to conclude beyond a reasonable doubt that
15  the Warehouse or Perfectus Defendants knowingly entered into an agreement with the
16  any co-conspirators to accomplish the unlawful activity charged in Count One of the
17  Indictment.  Accordingly, the Court should acquit the Warehouse and Perfectus
18  Defendants on Count One.

19  ### III.    CONCLUSION

20    For these reasons, pursuant to Rule 29, the Warehouse and Perfectus
21  Defendants respectfully request that the Court acquit Defendants of all charges.

LARSON LLP
LOS ANGELES

20
WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)

1   Dated:  September 7, 2021          LARSON LLP

2

3

4                                     By:      _____/s/ Hilary Potashner_____

5                                              Stephen G. Larson
                                               Hilary Potashner
                                               A. Alexander Lowder

6                                     Attorneys for Defendants

7                                     SCUDERIA DEVELOPMENT, LLC,
                                      1001 DOUBLEDAY, LLC,

8                                     VON KARMAN - MAIN STREET, LLC, and
                                      10681 PRODUCTION AVENUE, LLC

9

10  Dated:  September 7, 2021          RUYAKCHERIAN LLP

11

12

13                                    By:      _____/s/ Robert T. Ruyak_____

14                                             Robert F. Ruyak
                                               Joshua C. Benson

15                                    Attorneys for Defendants

16                                    PERFECTUS ALUMINIUM INC., aka
                                      "Perfectus Aluminum Inc.," and PERFECTUS
                                      ALUMINUM ACQUISITIONS LLC

17

18

19

20

21

22

23

24

25

26

27

28

WAREHOUSE DEFENDANTS AND PERFECTUS DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION FOR JUDGMENT OF ACQUITTAL (FED. R. CRIM. P. 29)